UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| CHAD I. WALKER, ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 22-11934-PBS |
| ANALOG DEVICES, INC., ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS
[Docket No. 6]

August 4, 2023

Boal, M.J.

Pro se plaintiff Chad I. Walker filed this action against defendant Analog Devices, Inc. asserting violations of the Sherman Act. Docket No. 1-1. Walker alleges that the confidentiality agreement he entered into with Analog Devices violates antitrust laws. Analog Devices has moved to dismiss Walker's complaint. Docket No. 6. For the following reasons, this Court recommends that Judge Saris grant Analog Devices' motion.[1]

I.  FACTUAL AND PROCEDURAL BACKGROUND[2]

In 2017, Walker signed an employment agreement with Analog Devices. Docket No. 1-1

---

[1] On December 8, 2022, Judge Saris referred this case to the undersigned for full pretrial management, and report and recommendation on dispositive motions. Docket No. 13.

[2] Because this case is presently before this Court on a motion to dismiss, I set forth the facts taking as true all well-pleaded allegations in the complaint and drawing all reasonable inferences in Walker's favor. See Morales-Tañon v. P.R. Elec. Power Auth., 524 F.3d 15, 17 (1st Cir. 2008).

at 4. The agreement[3] provides in relevant part that:

> I will not, during or after my employment, disclose to any person, firm, corporation, association or other entity for any reason or purpose whatsoever any Confidential Information or trade secrets, except (i) as expressly directed by ADI, or (ii) as may be required in the ordinary course of performing my duties as an employee of ADI in accordance with ADI's policies. I will not make use of any Confidential Information or trade secrets for my own purposes or for the benefit of any other person, firm, corporation or other entity under any circumstances during or after my employment. All Confidential Information and trade secrets are and will remain the sole and exclusive property of ADI or the third-party supplier of such Confidential Information or trade secrets, and immediately upon the termination of my employment, I will return to ADI any and all Confidential Information or trade secrets that are in my possession or control.

Docket No. 7-1 ¶ 1.

In early 2019, Analog Devices' hiring manager expressed interest in onboarding Walker for a different role within the company. Docket No. 1-1 at 4. After several months of discussions and interviews, "it was implied that [Walker] would need to resign in order to be brought in for the new role."[4] Id.

In July 2019, Walker resigned from Analog Devices. Id. Analog Devices did not hire him for a new position. Id. Walker subsequently interviewed with another company, a competitor and

---

[3] Analog Devices attached the employment agreement as an exhibit to the instant motion. Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into a motion for summary judgment. Alt. Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)). There are narrow exceptions to that rule, however. This Court may consider a document "sufficiently referred to in the complaint." See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993). In addition, when, as here, "a complaint's factual allegations are expressly linked to-and admittedly dependent upon-a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (citations omitted). Walker both relies on the employment agreement and sufficiently refers to it in the complaint. Docket No. 1-1. In addition, he does not dispute the agreement's authenticity. Indeed, he cites directly to the document in his opposition. See Docket No. 18 at 2; Docket No. 7-1. Accordingly, this Court will consider the document.

[4] Walker does not explicitly state that Analog Devices offered him another position.

customer of Analog Devices, but that company did not hire him. Id.

Since leaving Analog Devices, Walker has not found employment elsewhere. Id. He has been unable to obtain letters of reference and personnel evaluations from Analog Devices. Id. One organization to which Walker applied informed him that the references he provided at Analog Devices did not respond to the organization's requests for information. Id.

Walker filed pro se a complaint in Middlesex Superior Court on September 21, 2021. Id. at 1. Analog Devices removed the case to the United States District Court for the District of Massachusetts on November 14, 2022. Docket No. 1. On November 21, 2022, Analog Devices filed the instant motion to dismiss. Docket No. 6. On March 5, 2023, Walker filed an opposition. Docket No. 18. This Court heard oral argument on August 2, 2023.

II.  STANDARD OF REVIEW

A complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, the complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on its face." Abdisamad, 960 F.3d at 59 (quoting Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Id. (quoting Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018)).

In assessing the sufficiency of the complaint, the Court must first "strip away and discard the complaint's conclusory legal allegations." In re Montreal, Maine & Atlantic Railway, Ltd., 888 F.3d 1, 6 (1st Cir. 2018) (quoting Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012)). The Court must then "determine whether the remaining facts allow it 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Jane Doe No. 1 v.

Backpage.com, LLC, 817 F.3d 12, 24 (1st Cir. 2016)).

A document filed by a pro se party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). See also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

III.  ANALYSIS

Analog Devices contends that Walker (1) does not have antitrust standing and (2) has failed to state a claim under section 1 of the Sherman Act. Docket No. 7 at 3-4.

A.  Private Right Of Action

Walker alleges violations of the Sherman Act. Docket No. 1-1 at 5. Pursuant to section 1 of the Sherman Act, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. However, the Sherman Act does not provide a private right of action. Donovan v. Digit. Equip. Corp., 883 F. Supp. 775, 781 n.2 (D.N.H. 1994).

The Clayton Act, however, provides in relevant part that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor." 15 U.S.C. § 15(a). It further provides that "[a]ny person, firm, corporation, or association shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws." 15 U.S.C. § 26; see also Vazquez-Ramos v. Triple-S Salud, Inc., 55 F.4th 286, 293 (1st Cir. 2022).

For these reasons and because Walker is pro se, this Court will treat his claim as one brought pursuant to the Clayton Act but alleging Sherman Act violations. See Donovan, 883 F.

Supp. at 781; Vazquez-Ramos, 55 F.4th at 293.

B.     Antitrust Standing

Before assessing the merits of the plaintiff's underlying claim, a court must determine whether he or she has standing to proceed. See Donovan, 883 F. Supp. at 781. In an antitrust case, the plaintiff must establish both constitutional[5] and antitrust standing. Vazquez-Ramos, 55 F.4th at 293. Antitrust standing is distinct from constitutional standing. "Harm to the antitrust plaintiff is sufficient to satisfy the constitutional standing requirement of injury in fact, but the court must make a further determination whether the plaintiff is a proper party to bring a private antitrust action." Associated Gen. Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 535 n.31 (1983). A prospective antitrust plaintiff must have "suffered an injury of the kind antitrust laws were intended to prevent, such that the plaintiff is a proper party to bring a federal antitrust suit." Vazquez-Ramos, 55 F.4th at 293.

The purpose of the Sherman Act is to assure customers the benefits of price competition, which includes protecting their economic freedom to participate in the relevant market. See Associated Gen. Contractors of California, 459 U.S. at 538. Specifically, the Sherman Act "rests on the premise that the unrestrained interaction of competitive forces will yield the best allocation of our economic resources, the lowest prices, the highest quality and the greatest material progress." N. Pac. Ry. Co. v. United States, 356 U.S. 1, 4 (1958). Although the Sherman Act prohibits all agreements "in restraint of trade," the Supreme Court has long recognized that Congress only intended to prohibit "unreasonable restraints." State Oil Co. v. Khan, 522 U.S. 3, 10 (1997) (collecting cases). Unreasonable restraints of trade include price fixing, division of

---

[5] Here, Analog Devices does not contest constitutional standing, and, indeed, there appears to be no issue in that regard.

markets, group boycotts, and tying arrangements. N. Pac. Ry. Co., 356 U.S. at 5. Conduct, however, that impacts individual employment opportunities may not constitute an unreasonable restraint of trade. See Donovan, 883 F. Supp. at 782. In general, if conduct violates the Sherman Act, "[it] may be expected to cause ripples of harm to flow through the Nation's economy." Blue Shield of Virginia v. McCready, 457 U.S. 465, 476–77 (1982).

To determine whether a plaintiff has antitrust standing, courts conduct "an analysis of prudential considerations aimed at preserving the effective enforcement of the antitrust laws." RSA Media, Inc. v. AK Media Grp., Inc., 260 F.3d 10, 13 (1st Cir. 2001) (citation and quotation marks omitted). Specifically, the First Circuit has delineated a six-factor balancing test to determine antitrust standing:

> (1) the causal connection between the alleged antitrust violation and harm to the plaintiff; (2) an improper motive; (3) the nature of the plaintiff's alleged injury and whether the injury was of a type that Congress sought to redress with the antitrust laws ("antitrust injury"); (4) the directness with which the alleged market restraint caused the asserted injury; (5) the speculative nature of the damages; and (6) the risk of duplicative recovery or complex apportionment of damages.

Vazquez-Ramos, 55 F.4th at 293 (citation omitted).

A court must "consider the balance of factors in each case." Sullivan v. Tagliabue, 25 F.3d 43, 46 (1st Cir. 1994). However, the First Circuit has emphasized the causation requirements of that test. See RSA, 260 F.3d at 14. The first and fourth factors expressly require causation. RSA, 260 F.3d at 14. The third factor does not explicitly raise the issue of causation, but the First Circuit has "defined antitrust injury as injury of the type the antitrust laws were intended to prevent and that *flows from that which makes the defendants' acts unlawful*." Id. (citation and quotation marks omitted) (emphasis in original). Said differently, the alleged injury must be "the type of injury the antitrust violation would cause to competition." Vazquez-Ramos, 55 F.4th at 294 (quoting Sterling Merch., Inc. v. Nestlé, S.A., 656 F.3d 112, 121 (1st Cir. 2011)).

6

"Anticompetitive . . . refers not to actions that merely injure individual competitors, but rather to actions that harm the competitive process." Clamp-All Corp. v. Cast Iron Soil Pipe Inst., 851 F.2d 478, 486 (1st Cir. 1988) (citation omitted). "[T]he absence of antitrust injury will generally defeat standing." RSA, 260 F.3d at 14 (citation and quotation marks omitted).

The factors here weigh against antitrust standing. Walker has not adequately pleaded a causal connection between the employment agreement and his inability to secure employment. Specifically, he has not articulated how his inability to share Analog Devices' confidential information and trade secrets has limited his opportunity to find work.

Walker has alleged nothing indicating that Analog Devices acted with an improper motive or with an eye towards monopolization. Copperweld Corp. v. Indep. Tube Corp., 467 U.S. 752, 767.

Walker's alleged injury is not one that the antitrust laws were intended to prevent. Walker alleges that the restrictive agreement limited his own professional mobility and career prospects. However, the antitrust laws concern themselves not with injury to the individual, but rather to the competitive process as a whole. See Copperweld, 467 U.S. at 767 n.14 ("'[The] antitrust laws . . . were enacted for the protection of competition, not competitors.'"). "[L]oss of employment alone is insufficient for an antitrust injury." Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Loc. Lodge No. 1821 v. Verso Paper Corp., 80 F. Supp. 3d 247, 274 (D. Me. 2015).

The issue of whether Walker's damages are speculative does not weigh in his favor. "Damages may be considered speculative where the plaintiff's injury was indirect and possibly the result of intervening factors unrelated to the defendant's conduct." Donovan, 883 F. Supp. at 783. Walker has not alleged that his injury here, namely, his inability to obtain a job, stems from

the confidentiality provision of the employment agreement. Nor does he allege how his inability to share confidential information or trade secrets has inhibited him from securing employment.

With respect to the issue of duplicative recovery, the risk is minor and weighs in favor of Walker. "[I]n the absence of an action by a party claiming a more direct antitrust injury . . . there is little risk of duplicative injury." Id. at 784. Here, based on the record, no party claims a similar injury.

For all these reasons, Walker lacks antitrust standing to assert a Sherman Act violation, and Analog Devices' motion to dismiss should be granted on that basis alone.

C.      Walker Has Failed To State A Claim Under Section 1 Of The Sherman Act

Analog Devices argues that Walker has failed to state a claim under section 1[6] of the Sherman Act. Docket No. 7 at 4. A section 1 claim has two elements: "First, there must be concerted action" and "[s]econd, the actors' agreement must involve either restrictions that are per se illegal or restraints of trade that fail scrutiny under the rule of reason." Euromodas, Inc. v. Zanella, Ltd., 368 F.3d 11, 16 (1st Cir. 2004).

1.      Concerted Action

Concerted action occurs when "two or more entities that previously pursued their own interests separately are combining to act as one for their common benefit." Copperweld, 467 U.S. at 769. Congress treats concerted behavior more strictly because "[c]oncerted activity inherently is fraught with anticompetitive risk." Id. at 768-69. "The Sherman Act distinguishes between

---

[6] Section 1 of the Sherman Act "proscribes contracts and conspiracies in restraint of trade," while section 2 "prohibits the monopolization or attempted monopolization of an area of trade." Vazquez-Ramos, 55 F.4th at 296. Walker does not state the section pursuant to which he brings his claims. Because his complaint focuses on his contract with Analog Devices and does not make any allegations regarding monopolization, it appears that he intended to bring a claim pursuant to section 1.

concerted action by separate entities and independent action by a single firm. A single firm faces liability only if it engages in conduct that 'threatens actual monopolization.'" United States v. Am. Airlines Grp. Inc., No. CV 21-11558-LTS, 2023 WL 3560430, at *29 (D. Mass. May 19, 2023) (quoting Copperweld, 467 U.S. at 767-68); see also Podiatrist Ass'n, Inc. v. La Cruz Azul De Puerto Rico, Inc., 332 F.3d 6, 13 (1st Cir. 2003) ("[A]greements between two or more actors who operate within and for the benefit of a single economic enterprise do not satisfy the concerted action requirement of Section 1.")

Walker does not allege that Analog Devices engaged in concerted action. Although individual members of Analog Devices' organization may have collaborated in the creation of Analog Devices' employment agreement, the drafting of a contract within a single firm does not threaten actual monopolization.

Moreover, to the extent that Walker alleges that Analog Devices has collaborated with other companies to prevent him from obtaining employment by way of "no-poach" agreements, he does not allege any facts from which this Court could determine such agreements exist. Indeed, Walker explicitly states that he "is unaware of any 'no-poach' agreements." Docket No. 1-1 at 5. Furthermore, Walker has pointed to nothing, other than his own inability to obtain employment, to indicate any coordinated action between Analog Devices and other companies.

Because Walker has not plausibly alleged concerted action, the first element of a section 1 claim has not been met.

2.     Injury To Competition Under The Rule of Reason

Analog Devices argues that Walker's claim also fails on the second element of a section 1 claim because he has not alleged any injury to competition or to a market. Docket No. 7 at 5. Rather, Walker contends that the restrictive covenant agreement impacted him, and him alone,

by limiting his mobility and constraining his career prospects. Docket No. 1-1 at 5.

Walker has not alleged any per se illegality. Indeed, in Massachusetts, reasonable non-competition agreements are legal and enforceable. Parexel Int'l LLC v. Signant Health Holding Corp., No. 1:22-CV-11896-AK, 2023 WL 2938073, at *5 (D. Mass. Apr. 13, 2023); see also Ticknor v. Micro Ink Sys. Corp., No. 921524, 1994 WL 879505, at *6 (Mass. Super. Aug. 18, 1994) ("It is well settled law that a provision in an employment contract restricting an employee's ability to compete following the conclusion of his contract is not illegal per se or a restraint of trade.") (citing Blackwell v. E. M. Helides, Jr., Inc., 368 Mass. 225, 228 (1975)). Accordingly, because there is no per se illegality, the rule of reason analysis should be used. Vazquez-Ramos, 55 F.4th at 299.

"Under the rule of reason, courts engage in a fact-specific assessment of market power and market structure . . . to assess the [restraint]'s actual effect on competition." Id. (internal quotation marks and citations omitted) (alteration in original). This rule requires that a plaintiff first define the relevant market. Id. at 296; Am. Express, 138 S. Ct. at 2285 ("[C]ourts usually cannot properly apply the rule of reason without an accurate definition of the relevant market."). The relevant market is "the area of effective competition." Am. Express, 138 S. Ct. at 2285. It encompasses both a geographic market and a product market. Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016).

After defining the relevant market, a court must determine whether a restraint violates the rule of reason. Vazquez-Ramos, 55 F.4th at 299; see Am. Express, 138 S. Ct. at 2284. The courts have developed a three-part burden-shifting framework to make this determination:

> (1) "the plaintiff must 'prove that the challenged restraint has a substantial anticompetitive effect that harms consumers in the relevant market'"; (2) "[t]hen, the burden shifts to the defendant to demonstrate 'a procompetitive rationale for the restraint'"; and (3) "[f]inally, the burden shifts back to the plaintiff to establish that

> "the procompetitive efficiencies could be reasonably achieved through less anticompetitive means."

Vazquez-Ramos, 55 F.4th at 299 (quoting Am. Express, 138 S. Ct. at 2284). If the plaintiff does not meet his or her burden in the first step, the analysis need not proceed. See Am. Express, 138 S. Ct. at 2290.

Here, the complaint's only reference to geography is Walker's allegation that the employment agreement includes no geographic scope. Docket No. 1-1 at 5. The complaint also fails to define a relevant market. Accordingly, the first requirement of the rule of reason has not been met.

Even if Walker had identified a relevant market, he would still have to plead that the employment agreement violates the rule of reason. He has not done so. Specifically, Walker has not shown in his complaint that the employment agreement has a substantial anticompetitive effect that harms consumers. Although Walker alleges that the employment agreement impacted his personal employment prospects, he has not alleged that the agreement impacts anyone else. Because Walker has not met his burden in the first part of the three-part test, he has not demonstrated that the employment agreement violates the rule of reason.

Because the second element of a section 1 claim has not been met, Walker has failed to state a claim under the Sherman Act for this reason as well.

## IV.   RECOMMENDATION

For the foregoing reasons, this Court recommends that Judge Saris grant Analog Devices' motion to dismiss and dismiss the amended complaint in its entirety.

## V.   REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written

objections thereto with the Clerk of this Court within 14 days of service of this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections. See Fed. R. Civ. P. 72. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge